```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
                    CORPUS CHRISTI DIVISION

OLATUNJI LINDSEY,                 §
                                  §
      Plaintiff,                  §     Civil Action
                                  §     No. C-05-571
v.                                §
                                  §
ONE SOURCE,                       §
                                  §
      Defendant.                  §
```

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

On this day came on to be considered Defendant OneSource Facility Services, Inc.'s ("OneSource") Motion for Summary Judgment (D.E. 22).[1] For the reasons set forth below, the Court hereby GRANTS OneSource's Motion for Summary Judgment and DISMISSES Plaintiff's claims with prejudice.

## I.  Jurisdiction

The Court has federal question jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331.

## II. Procedural Background

Plaintiff filed this action against OneSource on November 10, 2005.[2] (D.E. 1). Plaintiff alleges that during his employment at OneSource, OneSource discriminated against Plaintiff in violation

---

[1] Defendant OneSource was improperly sued as "One Source Corpus Christi, Texas" in Plaintiff's complaint. (D.E. 1).

[2] Plaintiff filed an in forma pauperis Application and Complaint on November 10, 2005. (D.E. 1). Plaintiff's complaint was considered filed as of that date. See Hernandez v. Aldridge, 902 F.2d 386, 388 (5th Cir. 1990). (D.E. 12). Plaintiff's case was assigned to this Court on December 6, 2005. (D.E. 1).

of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq. ("Title VII").[3] (Id.).

On September 20, 2006, OneSource filed the instant motion for summary judgment (D.E. 22). OneSource argues that Plaintiff cannot establish a prima facie case of racial discrimination, and that even if he could establish a prima facie case, that Plaintiff cannot meet his ultimate burden of proving discrimination by OneSource in violation of Title VII. (Id.). On October 4, 2006, Plaintiff filed his response in opposition (D.E. 24).[4] Plaintiff

---

[3] Plaintiff's original complaint is a form "check the box" complaint that he filed in forma pauperis. (D.E. 1). In the section entitled "When and how the defendant has discriminated against the plaintiff", Plaintiff responded with the handwritten statement: "Between September 1, 2004 until present I have been subjected to a hostile work environment and harassment such as closer scrutiny (sic) less desirable duties by Gloria Reyes." (Id. at ¶ 7). This contention is repeated in Plaintiff's affidavit attached to his original complaint. (Id. at p. 4). Plaintiff makes no further reference to a "hostile work environment." At the January 20, 2006 initial pretrial and scheduling conference before the Court, Plaintiff's counsel represented that Plaintiff's only claim against OneSource was for "race based discrimination," and that Plaintiff had been constructively discharged from his employment. (See remarks of Plaintiff's counsel Jason Jett at January 20, 2006 conference). Further, the parties' summary judgment papers focus exclusively on Plaintiff's claim of Title VII discrimination, and neither party makes any reference to (or argument on) hostile work environment. Accordingly, this Court analyzes this case as a Title VII racial discrimination case, as that appears to be how Plaintiff wishes to proceed.

[4] Plaintiff's response brief indicates that Plaintiff intended to supplement his response upon receipt of additional deposition transcripts. See, e.g., Response, p. 5 ("upon receipt of all of the deposition transcripts, Plaintiffs (sic) attorneys will be able to supplement this response" and "[t]his topic may be elaborated once Plaintiffs (sic) attorneys receive all of the deposition transcripts."). However, Plaintiff never did

argues that he can establish a prima facie case of discrimination in violation of Title VII, and that he was constructively discharged from his employment with OneSource. (Response, p. 4). On October 25, 2006, OneSource filed a reply brief in support of its summary judgment motion. (D.E. 28, 29).[5]

III. **Summary Judgment Evidence and Uncontested Facts**

In support of its motion for summary judgment, OneSource offers the following evidence:

DX-A: Declaration of Sharon Bueno, OneSource District Manager in Corpus Christi, Texas, with the following attachments: DX-A1 (OneSource policy entitled "Work Rules for Service Employees"), DX-A2 (Plaintiff's acknowledgment of receipt of OneSource work rules policy), and DX-A3 (Employee Discipline Notice for Plaintiff, dated March 30, 2005).

DX-B Declaration of Gloria Reyes, OneSource Senior Project Manager in Corpus Christi, Texas.

DX-C Plaintiff's February 17, 2005 Affidavit.

DX-D Plaintiff's February 17, 2005 Charge of Discrimination to the Corpus Christi Human Relations Commission (Charge No. 36BA50094).

DX-E Report of Pre-Determination Interview conducted by EEOC Compliance Officer Leo Lorenzo.

DX-F Letter of Determination by the Corpus Christi Human Relations Commission.

---

supplement his response, even when all of the deposition transcripts became available.

[5]On October 25, 2006, OneSource filed a motion for leave to file its reply brief (D.E. 27). The Court finds that good cause exists to allow OneSource to file its reply brief, and the Court hereby GRANTS OneSource's motion for leave.

>    DX-G        Plaintiff's August 5, 2002 Charge of Discrimination
>                to the Corpus Christi Human Relations Commission
>                (Charge No. 26BA20244).
>
>    DX-H        Excerpts of the September 21, 2006 deposition of
>                Plaintiff Olatunji Lindsey.
>
>    DX-I        Excerpts of the September 29, 2006 deposition of
>                Elma Garza.
>
>    DX-J        Excerpts of the September 22, 2006 deposition of
>                Mike Belmontes.
>
>    DX-K        Excerpts of the September 21, 2006 deposition of
>                Sharon Bueno.
>
>    DX-L        Excerpts of the September 22, 2006 deposition of
>                Gloria Reyes.
>
>    DX-M        Excerpts of the September 29, 2006 deposition of
>                Kathleen Farahmand.[6]

(See D.E. 22, 28, 29, attachments).

Plaintiff offers the following evidence in support of his response to OneSource's motion:

>    PX-A:       Excerpts from the September 21, 2006 Deposition of
>                Sharon Bueno.
>
>    PX-B:       Excerpts from the September 29, 2006 Deposition of
>                Elma Garza.[7]

(See D.E. 24, attachments). The Court notes that the Plaintiff did not file an affidavit in support of his opposition to OneSource's motion. As Plaintiff had an opportunity to contest evidence put forth by OneSource, but he chose not to do so, the Court finds the

---

[6] Exhibits DX-H through DX-M were attached to OneSource's reply brief, not to their original moving papers. (D.E. 28, 29).

[7] With the exception of page 30 of the Deposition of Sharon Bueno, the evidence offered by the Plaintiff is identical to the evidence offered by OneSource in Exhibits DX-I and DX-K.

following facts to be uncontested:

Plaintiff, an African-American, worked in a janitorial position for OneSource from August, 2003 until May, 2005.[8] (Bueno Decl.). Plaintiff was hired and supervised by Gloria Reyes, OneSource Senior Project Manager. (Bueno Decl.; Reyes Decl.). Ms. Reyes was supervised by Sharon Bueno, OneSource District Manager. (Bueno Decl.). During his time at OneSource, Plaintiff was assigned to clean a Best Buy store and later a Coca-Cola Bottling facility. (Bueno Decl.; Reyes Decl.; Lindsey Dep., 70:15-18).

In September, 2004, Plaintiff complained to Coca-Cola personnel, claiming that a Coca-Cola warehouse employee made racially derogatory remarks in Plaintiff's presence. (DX-F, Letter of Determination, p. 3; Bueno Decl.; Farahmand Dep., 14:6-15:23). A Coca-Cola human resources administrator met with Plaintiff and the Coca-Cola employee, and the administrator contacted Ms. Reyes and Ms. Bueno at OneSource and told them of Plaintiff's complaint. (Bueno Decl.; Reyes Dep., 8:2-6, Farahmand Dep., 6:2-3, 14:20-17:16, 21:5-23:11). Upon learning of Plaintiff's complaint, both Ms. Bueno and Ms. Reyes met with Plaintiff and commenced an investigation regarding the alleged remarks.[9] (Bueno Decl.; Bueno

---

[8]OneSource is a provider of outsourced building services in the United States, including providing cleaning and janitorial services. (Bueno Decl.; Reyes Decl.).

[9]Coca-Cola also investigated Plaintiff's complaint regarding the alleged racial remarks. (Bueno Decl.; Bueno Dep., 31:11-16).

Dep., 18:8-20:15; Reyes Dep., 8:17-23, 13:1-15:11, 21:3-20). The investigation took three to four months. (Reyes Dep., 21:3-10). During the course of the investigation, both Ms. Bueno and Ms. Reyes repeatedly asked Plaintiff if everything was okay at Coca-Cola, and Plaintiff consistently responded in the affirmative. (Bueno Decl., Bueno Dep., 20:16-22:21, Reyes Dep., 10:9-25). Plaintiff also informed Coca-Cola human resources that everything was fine. (Farahmand Dep., 19:2-8). September, 2004 was the last time Plaintiff contacted Ms. Bueno or Coca-Cola human resources regarding the alleged racial remarks. (Lindsey Dep., 125:1-6, 126:4-8). When Plaintiff resigned, there were no racial remarks being made at that time. (Id. at 69:11-21).

Plaintiff resigned from his employment at OneSource in May, 2005. (Bueno Decl., Lindsey Dep., 125:7-10). At the time of his resignation, Plaintiff did not tell Ms. Bueno or Ms. Reyes that he was resigning from OneSource because of race-based harassment or discrimination.[10] (Id.).

## IV.  Discussion

### A.  Summary Judgment Standard

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[10]At the time of his resignation, Plaintiff also did not tell Ms. Bueno or Ms. Reyes of any ongoing problems at Coca-Cola. (Lindsey Dep., 57:19-22, 125:7-10).

affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; see also Judwin Props., Inc., v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1046-1047 (5th Cir. 1996). If the nonmovant bears the burden of proof on a claim, the moving party may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. See Celotex Corp., 477 U.S. at 325; Ocean Energy II, Inc. v. Alexander & Alexander, Inc., 868 F.2d 740, 747 (5th Cir. 1989).

Once the moving party has carried its burden, the nonmovant "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." First Nat'l Bank of Arizona v. Cities

Serv. Co., 391 U.S. 253, 270 (1968); see also Schaefer v. Gulf Coast Reg'l Blood Ctr., 10 F.3d 327, 330 (5th Cir. 1994) (stating that nonmoving party must "produce affirmative and specific facts" demonstrating a genuine issue).

When the parties have submitted evidence of conflicting facts, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Willis, 61 F.3d at 315. Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the nonmoving party, no reasonable jury could return a verdict for that party. See, e.g., Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000).

### B. Title VII Racial Discrimination

Title VII makes it an "unlawful employment practice for an employer to ... discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e2(a)(1).

In a racial discrimination case based on a circumstantial evidence, courts will analyze the claim using the McDonnell Douglas three-party burden shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973); see also, e.g., Frank v. Xerox Corp., 347 F.3d 130, 137 (5th Cir. 2003).

Under this framework, the plaintiff must initially establish a prima facie case of discrimination. See McDonnell Douglas Corp., 411 U.S. at 802; Johnson v. Louisiana, 351 F.3d 616, 621 (5th Cir. 2003) (citing Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 680 (5th Cir. 2001)) (the burden lies initially with the plaintiff "to raise a genuine issue of material fact on each element of his prima facie case"). In order to establish a prima facie case of discrimination under Title VII, a plaintiff must prove that (1) he is a member of a protected class; (2) he was qualified for the position held; (3) he was subject to an adverse employment action; and (4) the person selected to replace the plaintiff was not within the same protected class. See Frank, 347 F.3d at 137.

Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for its decision to take an adverse employment action against the plaintiff. See Walton v. Bisco Indus., Inc., 119 F.3d 368, 370 (5th Cir. 1997). If the employer meets this burden of production, the prima facie case dissolves, and the burden shifts back to the plaintiff to establish that the employer's explanation is merely pre-textual. See id.; McDonnell Douglas, 411 U.S. at 805 (stating that the burden shifts back to plaintiff to show that the defendant's justification is "in fact a coverup for a racially discriminatory decision"). In establishing pretext, a "plaintiff cannot succeed by proving only

that the defendant's proffered reason is pretextual ... [r]ather, a reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, *and* that discrimination was the real reason." Walton, 119 F.3d at 370 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)). The plaintiff's evidence must be substantial to support a reasonable fact finder's inference of discrimination. Walton, 119 F.3d at 370.

C. **Plaintiff Cannot Establish a Prima Facie Case of Discrimination**

For the reasons set forth below, there is no genuine issue of material fact that Plaintiff did not suffer an adverse employment action. Accordingly, Plaintiff cannot establish a key element of his prima facie case.[11]

---

[11] The parties' briefs argue over the significance of Sydney Miller, an African-American employee of OneSource, replacing Plaintiff in his former position at Coca-Cola Bottling. (D.E. 22, 24, 28; Bueno Decl.). OneSource argues that Plaintiff cannot prove a prima facie case of discrimination because Plaintiff's replacement was a member of the same protected class. Plaintiff argues that Mr. Miller did not "replace" Plaintiff because Mr. Miller was already an existing OneSource employee. However, despite the arguments of the parties, Mr. Miller's re-assignment to Plaintiff's former position is not outcome determinative in this case. The Fifth Circuit has repeatedly held that the "replacement" element of a prima facie case is not dispositive, and a plaintiff is not precluded from establishing a prima facie case merely because the plaintiff's replacement was a member of the same protected class. See Byers v. Dallas Morning News, Inc., 209 F.3d 419, 427 (5th Cir. 2000); Nieto v. L & H Packing Co., 108 F.3d 621, 624 n. 7 (5th Cir. 1997); Mason v. United Air Lines, Inc., 274 F.3d 314, 318 (5th Cir. 2001). Regardless, in this case it is not necessary for the Court to address the issue of Plaintiff's replacement, since there is no genuine issue that Plaintiff did not suffer an adverse employment action. See

### 1. <u>Constructive Discharge</u>

As a part of his prima facie case, Plaintiff must prove that he suffered an adverse employment action. See <u>Frank</u>, 347 F.3d at 137. In this case, Plaintiff resigned from his employment, so he must prove "constructive discharge." <u>Barrow v. New Orleans Steamship Ass'n</u>, 10 F.3d 292, 296 (5th Cir. 1994).[12]

To prove constructive discharge, "an employee must offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign." <u>Id.</u>; <u>see</u> <u>also</u> <u>Brown v. Kinney Shoe Corp.</u>, 237 F.3d 556, 565 (5th Cir. 2001); <u>Faruki v. Parsons</u>, 123 F.3d 315, 319 (5th Cir. 1997). Whether a reasonable employee would feel compelled to resign depends on the facts of each case, but the Fifth Circuit considers the following non-exclusive factors to be relevant in the analysis:

    (1)  demotion;
    (2)  reduction in salary;
    (3)  reduction in job responsibilities;
    (4)  reassignment to menial or degrading work;
    (5)  reassignment to work under a younger supervisor;
    (6)  badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or
    (7)  offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not.

<u>Barrow</u>, 10 F.3d at 296; <u>see</u> <u>also</u> <u>Brown v. Bunge Corp.</u>, 207 F.3d

---

<u>Frank</u>, 347 F.3d at 137.

[12]Plaintiff does argue in his response brief that he was constructively discharged from his employment. (Response, p. 4).

776, 782 (5th Cir. 2000); Brown v. Kinney Shoe, 237 F.3d at 565.

Moreover, to prevail on a claim of constructive discharge, the plaintiff "must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." Landgraf v. USI Film Prods., 968 F.2d 427, 430 (5th Cir. 1992), aff'd, 511 U.S. 244 (1994); see also Brown v. Kinney Shoe, 237 F.3d at 565 ("Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim ... Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge"); Benningfield v. City of Houston, 157 F.3d 369, 378 (5th Cir. 1998); Boze v. Branstetter, 912 F.2d 801, 805 (5th Cir. 1990).

### 2. **Plaintiff Was Not Constructively Discharged**

"The resigning employee bears the burden to prove constructive discharge", and Plaintiff has not offered evidence to establish a genuine issue on whether he was constructively discharged by OneSource. Haley v. Alliance Compressor LLC, 391 F.3d 644, 650 (5th Cir. 2004).

Plaintiff bases his constructive discharge allegation on the following three arguments:

(1) Plaintiff was denied supplies he requested, while those supplies were given to Hispanic employees;

(2) Plaintiff was tasked with cleaning extremely dirty restrooms at Coca-Cola, which he claims were vandalized

>    by Coca-Cola employees because they knew Plaintiff would have to clean the restrooms;[13] and
>
> (3) Plaintiff was subjected to racially derogative remarks while at the Coca-Cola facility.

(Response, pp. 3-5).

### a.   Allegation re: Requested Supplies

Plaintiff claims that Ms. Reyes refused to give him a mop bucket he asked for to do his job, but shortly thereafter Ms. Reyes provided a mop bucket to two Hispanic employees.[14]  (Lindsey Dep., 71:8-72:9, 83:1-6).  Plaintiff could not name the two Hispanic employees, he could only provide a general physical description.  (Id.).  Moreover, Plaintiff admits that he already had a mop bucket, the one used for the restrooms, he just wanted a second mop bucket to use for the floor areas.  (Id. at 71:10-17).  Plaintiff did not provide any information as to whether the two Hispanic employees already had one mop bucket and received a second one from Ms. Reyes.  (See, generally, id. at 71:8-72:9, 83:1-6).  This

---

[13]Plaintiff did not raise the issue of the dirty restrooms in his complaint or in his charge of discrimination to the EEOC. (D.E. 1; DX-C, Affidavit).

[14]Plaintiff also claims he had some issues with a buffer machine while at Best Buy, but that problem was taken care of. (Lindsey Dep., 75:18-76:9).  Plaintiff's other issues regarding his work at Best Buy concerned allegations that his co-worker, Ms. Reyes' son, was not performing well and was stealing from the store.  These allegations are not under the purview of Title VII, and Plaintiff does not raise them in his summary judgment papers. (Id. at 76:15-82:2).

situation with the mop bucket allegedly occurred while Plaintiff was assigned to clean at Best Buy, at least eight months before his resignation.[15]  (Id.)

Taking Plaintiff's allegations as true, a single denial of a second mop bucket, at least eight months before his resignation, does not rise nearly to the level of "severe" or "pervasive" harassment necessary to support Plaintiff's claim for constructive discharge.  Landgraf, 968 F.2d at 430.

### b. Allegation re: Restroom Cleaning

Plaintiff claims that he was tasked to clean certain restrooms at Coca-Cola that were extraordinarily dirty, and that the restrooms were in such a condition because they were vandalized by Coca-Cola employees who knew that Plaintiff had to clean them.[16] However, the unconstested facts show that Plaintiff was tasked with cleaning the rear restrooms at the facility, which were used by more people and were generally dirtier than the restrooms in the front of the building.  (Garza Dep., 16:2-17:2, 26:21-27:6;

---

[15]Plaintiff was assigned to clean at Best Buy before he was assigned to clean the Coca-Cola Bottling facility.  The undisputed facts show that as of September, 2004, Plaintiff had switched to Coca-Cola.  (Bueno Dep., 19:16-18; Lindsey Dep., 125:1-6; Farahmand Dep., 15:6-9).  Therefore, the alleged incident with the mop bucket must have taken place at least prior to September, 2004, which was at least eight months before Plaintiff's May, 2005 resignation.

[16]Plaintiff claims that this alleged effort to dirty the Coca-Cola restrooms was motivated by Plaintiff's race. (Response, p. 3).

Belmontes Dep., 8:21-22, 14:21-16:8). Moreover, fellow OneSource employee Mike Belmontes, who is not African-American, was also tasked with cleaning the same restrooms as Plaintiff, and he testified that approximately twice a week he found those restrooms in the same dirty condition that Plaintiff complained about. (Belmontes Dep., 14:21-15:22).[17] Further, Elma Garza, a Hispanic woman tasked with cleaning the front restrooms, testified that once or twice she found the front restrooms in the same dirty condition complained about by Plaintiff.[18] (Garza Dep., 16:5-8). When asked if the rear restrooms that Plaintiff was asked to clean were in an extremely dirty state because Plaintiff was the one cleaning them, Ms. Garza responded "*I can't say*", and "I don't know if they were doing it because of him or – *or I don't know, I don't know*." (Garza Dep., 14:20-25) (emphasis added).

Plaintiff was a janitor *whose business it was to clean*, and he

---

[17]Mr. Belmontes testified that he would find the restrooms to be smeared with feces on the floor, with rolls of toilet paper stuffed into the toilet bowls, on average about twice a week. Mr. Belmontes testified "you got to understand, you got like a hundred people using that rest room, more than a hundred people per day ... [t]hose are the only restrooms you can use." (Belmontes Dep., 15:1-16:13).

[18]Ms. Garza said that generally, the rear restrooms that Plaintiff was supposed to clean were dirtier because that was "where the warehouse guys work." (Garza Dep., 16:2-25). Ms. Garza said that "once or twice", she found the front restrooms in a condition similar to the dirty restrooms cleaned by Plaintiff. (Id. at 16:5-8). Ms. Garza testified that the front restrooms would become extremely dirty when the "guys from the back" used them. (Id. at 16:17-25, 17:1-2).

is complaining about cleaning dirty restrooms that were also cleaned by non African-American employees of OneSource. (Belmontes Dep., 15:1-22; Garza Dep., 16:5-8). Plaintiff has not offered any evidence to support his claim that the restrooms he cleaned were especially dirty because he was the one tasked with cleaning them.[19] As such, his allegation regarding the dirty restrooms does not support his claim of constructive discharge. See, e.g., Vaughn v. Pool Offshore Co., 683 F.2d 922, 926 (5th Cir. 1982) (offensive harassment, shared equally by all, would not "compel the resignation of a reasonable employee because of racial discrimination ... any such resignation would not subject the employer to the sanctions of Title VII"); see also Hill v. K-Mart Corp., 699 F.2d 776, 778 (5th Cir. 1983) (manager's "disdain[ful]" treatment of plaintiff could not support constructive discharge claim where manager treated other subordinates the same way, regardless of their race).

       **c.**    **Allegation re: Racial Remarks**

As discussed above, in September, 2004, Plaintiff complained to Coca-Cola personnel of racially derogative remarks being made in his presence at the Coca-Cola facility. (Letter of Determination; Bueno Decl.; Farahmand Dep., 14:6-15:23). These remarks were

---

[19]To the contrary, the summary judgment evidence shows that the bathrooms were dirty because they were in the rear of the building and were used by a large number of people. (Garza Dep., 16:2-17:2, 26:21-27:6; Belmontes Dep., 8:21-22, 14:21-16:8).

investigated by Ms. Reyes, Ms. Bueno, and Coca-Cola. (Bueno Decl.; Bueno Dep., 18:8-20:15, 31:11-16).

Plaintiff concedes that the last time he talked to Ms. Bueno or Coca-Cola human resources about the alleged racial remarks was at least eight months before he resigned, and that when he resigned, the racial comments were no longer taking place.[20] (Lindsey Dep., 125:1-6, 126:4-8). Racially derogative remarks that *Plaintiff last complained of over eight months before his resignation, which were no longer happening at the time Plaintiff left OneSource*, cannot form the basis for a constructive discharge claim. See Reznick v. Associated Orthopedics & Sports Medicine, P.A., 104 Fed.Appx. 387, 393 (5th Cir. 2004) ("*constructive discharge cannot be based on facts that are remote in time*") (emphasis added); Hill, 669 F.2d at 778 (declining to find constructive discharge when "[m]ost of the incidents took place long before [plaintiff's] resignation"); Taylor v. Nickels and Dimes Inc., 71 Fed.Appx. 440 (5th Cir. 2003).

### d. **Plaintiff Has Not Raised a Genuine Issue as to Constructive Discharge**

Moreover, Plaintiff has not offered evidence in support of any of the "Barrow factors" set forth above. See Barrow, 10 F.3d at

---

[20] When asked about any possible offensive comments being made at Coca-Cola before he resigned, Plaintiff responded "Well, it wasn't really comments. It was the trash and the feces there before I left. [referring to the dirty restrooms]. That was the last thing that was going on." (Lindsey Dep., 69:4-13).

296.[21]  While the Barrow factors are non-exclusive, Plaintiff has not offered any evidence "sufficient to raise a genuine dispute on any other basis for constructive discharge". Id. ***The denial of a mop bucket, cleaning dirty restrooms that non African-American employees also had to clean, and the allegedly offensive comments that were investigated and ceased well before Plaintiff resigned*** do not rise to the level of "***intolerable***" conditions that support a constructive discharge claim.  Id. (emphasis added).

In sum, the Fifth Circuit sets a "high standard for establishing a constructive discharge," and Plaintiff has not

---

[21]Plaintiff has failed to submit evidence to show that OneSource demoted him, reduced his salary, reduced his job responsibilities, reassigned him to work under a younger supervisor, of offered him early retirement on terms that would make him worse off.  Barrow, 10 F.3d at 296.  Nor has Plaintiff submitted any evidence on the Barrow factors of "reassignment to menial or degrading work" or "badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation" Id.  During his entire time at OneSource Plaintiff worked as a janitor, which included the task of cleaning restrooms.  Having to clean especially dirty restrooms, when other non African-American employees were faced with the same task, does not qualify as the Defendant "*re-assigning*" the Plaintiff to "menial or degrading work" or "badgering, harassment, or humiliation" by OneSource calculated to force Plaintiff to resign.  Id. (emphasis added).  Plaintiff has not proffered any evidence, or even suggested, that OneSource ever "calculated" to encourage Plaintiff to resign.  On the contrary, the summary judgment evidence shows that OneSource tried to work with Plaintiff to investigate his claims of racial comments at Coca-Cola, and that Plaintiff was not the only OneSource employee cleaning very dirty restrooms at the Coca-Cola facility.  (Bueno Decl.; Reyes Dep., 8:17-23, 13:1-15:11; Belmontes Dep., 15:1-22).  Based on the above, Plaintiff has not offered evidence to create an issue on any of the constructive discharge factors listed in Barrow.

presented evidence from which a jury could find that a reasonable person in Plaintiff's position would have felt compelled to resign. Jackson v. M.D. Anderson, 54 Fed.Appx. 404 (5th Cir. 2002). Accordingly, Plaintiff cannot establish that he suffered an adverse employment action, a necessary element for a prima facie case of racial discrimination. OneSource is therefore entitled to summary judgment on Plaintiff's Title VII discrimination claim.

**V,    Conclusion**

For the reasons set forth above, this Court hereby GRANTS Defendant OneSource's Motion for Summary Judgment. (D.E. 22). Plaintiff's claims against OneSource are hereby DISMISSED with prejudice.

SIGNED and ENTERED this 20th day of November, 2006.

_____
Janis Graham Jack
United States District Judge